**William E. BROCK, Secretary of the Department of Labor, Plaintiff,**

v.

**William R. DeWITT, d/b/a Bonanza Steak House, Defendant.**

No. 84–3096–CV–S–2.

United States District Court, W.D. Missouri, S.D.

Feb. 20, 1986.

Michael A. Stabler, U.S. Dept. of Labor, Francis X. Lilly, Tedrick A. Housh, Jr., Kansas City, Mo., for plaintiff.

John S. Pratt, Springfield, Mo., for defendant.

COURT'S FINDINGS OF FACT AND
CONCLUSIONS OF LAW

COLLINSON, Senior District Judge.

The Secretary of Labor filed this action on February 21, 1984, alleging violations of the minimum wage and record keeping divisions of the Fair Labor Standards Act of 1938, as amended (hereinafter called "the Act"), by defendant at his restaurant establishment in West Plains, Missouri. The complaint seeks back wages, and an equal additional amount as liquidated damages and an injunction against future violations of the Act. Upon motion of plaintiff, this case was bifurcated and the issue of whether defendant's payroll practices constitute a violation of the Act was tried on Monday, November 4, 1985. Plaintiff requested that the case be bifurcated, stating that "if the Court should rule that defendant has violated the Act, there is a good possibility that the parties can reach an agreement on the amount of back wages owed." *See* plaintiff's motion to bifurcate trial, filed October 1, 1985.

## STATEMENT OF FACTS

At all relevant times, defendant was engaged in the business of running a Bonanza Steak House located at 3005 Porter Waggoner Boulevard, West Plains, Missouri. Defendant William R. DeWitt purchased the Bonanza Steak House in 1980. Defendant's business fluctuates in terms of labor generated work, depending on the days of the week, time of day, weather conditions and other factors. The Court heard testimony from "order takers," "salad bar preparers," cashier, cooks, dishwashers, "busers," waitresses, managers and the owner.

The facts of this case, for the most part, are not in dispute. Defendant posted a work schedule in the breakroom, which is a small room containing a table and some chairs off the side of the customers' dining room. The work schedule set forth an exact time for an employee to be at work. The schedule remained the same week after week. The "part-time" employees, such as dishwashers, busers, cooks and waitresses, reported directly to the breakroom.

Also located in the "breakroom" was a posted notice which read:

Attention all employees:

When you are scheduled in at one certain time and not needed you may stay in the breakroom or leave. If you leave and someone is needed to work, whoever is available will check in. Thanks,

Bill.

*See*, Stipulation of Facts, filed November 4, 1985. As a result of the employer's policy posted in the breakroom, employees generally waited in the breakroom until defendant DeWitt or the manager, Colleen Griffey determined that there was enough business to justify "clocking in" the employee. Part-time employees were notified of the employer's policy prior to taking a job.

This policy was in effect from March 1, 1982 until October 31, 1983.

Although the posted notice allowed the part-time employees to leave after arriving at their scheduled time and finding that in order to work they would have to wait, very few instances of employees leaving the premises were described at trial. A few part-time employees did go to their car in the parking lot to listen to music and were hailed from their car by the employer when work became available. However, for the most part, part-time employees came to the employer's place of business at their scheduled times and ended up waiting *on the average* one-half hour before actually engaging in specific work.

The testimony consistently was that part-time employees generally had to wait before "clocking in" every day of the week except one. The part-time employees were almost exclusively high school students, some of which were participating in the cooperative occupational employment program (COE).

Once the defendant or his manager determined that there was enough work to justify putting another employee on the clock, the defendant or his manager would go to the break room and find the neces-

sary employees and select the one that had arrived the earliest to begin work. In other words, the one who had waited the longest and was hired to fill that position needed at the present time would be compensated from that moment until the end of his scheduled shift. If an employee chose to leave while waiting for work, another employee would be put to work or the restaurant would operate shorthanded. Part-time employees were not told by defendant that they could leave for a specific period of time or that if work became available it would be held until their return.

Although none of the part-time employees who showed up for work on a particular day, were ever denied the opportunity to work some portion of that day, they sometimes waited in excess of two hours before compensable time began to accumulate. Once the part-time employee was engaged in specific activities and accomplishing tasks set out by the defendant, they were allowed to complete their scheduled shift and were not asked to clock out because work was not available for them. While waiting for work in the breakroom, part-time employees were allowed to relax, converse with other waiting part-time employees and indulge in free soft drinks or eat at reduced prices. The Court believes it is not necessary to determine whether or not employees were ever scolded for ever having left while waiting to be put to work.

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has been called upon to interpret whether the defendant's policy posted in the breakroom engages the employees to wait or, employees are waiting to be engaged. Quite simply, if the sign, which represents *the policy* of the management of the defendant in this case, is interpreted as allowing employees to wait to be engaged, then the defendant would not be liable in this action. On the other hand, if the sign is interpreted, under all the attending circumstances, to mean that employees were engaged to wait, then the employer/defendant is at the very least liable for

back wages and possibly injunctive relief, liquidated damages and attorney's fees.

The United States Supreme Court recognizes that waiting time may be compensable under the Act. In *Armour and Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), the Court stated:

Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominately for the employer's benefit or for the employee's is a question dependent upon all circumstances of the case.

*See also Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

In 1947 Congress passed the Portal to Portal Act, 29 U.S.C. § 251 *et seq.*, to delineate what is and is not compensable time within the meaning of the Act. Thus, whether waiting time in this case is compensable or not depends upon whether it is considered part of the employee's "principal activity" or is "preliminary" in nature. *See* 29 C.F.R. § 790.7(a) and (b) (1985).

[A]n activity which is a "preliminary" or "postliminary" activity under one set of circumstances may be a principal activity under other conditions. This may be illustrated by the following example: Waiting for the time established for the commencement of work would be regarded as a preliminary activity when the employee voluntarily arrives at his place of employment earlier than he is either required or expected to arrive. Where, however, an employee is required by his employer to report at a particular hour at his workbench or other place where he performs his principal activity, if the employee is there at that hour ready and willing to work but for some reason beyond his control there is no work for him to perform until some time has elapsed, waiting for work would be an integral

part of the employee's principal activities. The difference in the two situations is that in the second, the employee was engaged to wait while in the first the employee waited to be engaged. (Footnotes omitted.)

29 C.F.R. § 790.7(h) (1985). And in 29 C.F.R. § 790.6(b) it states:

If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his "workday" commences at the time he reports there for work in accordance with the employer's requirement, even through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time.

This Court believes that the employees, by reporting to the Bonanza Steak House, at a certain specific time began his "workday." The breakroom, where the part-time employees reported, did not create a buffer. The part-time employees were not in the breakroom for any purpose of their own, but for their employer's benefit. The fact that they were unable to begin work immediately was a reason totally beyond their control; *i.e.* because defendant determined that there was an insufficient amount of customer flow to justify putting them to work immediately.

Defendant argues that this waiting time was not compensable because the employees were free to leave the establishment.

It is not possible to lay down any arbitrary rule as to whether time spent in waiting ... is or is not working time. There are many attending circumstances to be taken into consideration, among them the number of consecutive hours the employee is subject to call without being required to perform active work, the extent to which he is free to engage in personal activities during periods of idleness, whether he is required to remain on or about the premises during such time, or whether he can leave word where he may be reached in the event of a call and is not required to remain in any particular place.

*Central Missouri Tel. Co. v. Conwell,* 170 F.2d 641, 646 (8th Cir.1948). *See also Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

The part-time employees hired by defendant, if they wish to work that day, were required to be on the employer's premises after the time scheduled for their shift to begin. The question is not so much whether the cooks and dishwashers, busers and waitresses were cooking steaks, washing dishes, cleaning tables, or serving food, as it is whether they were performing their regular duties assigned to them by their employer and not free to pursue activities of a purely private nature. *Glenn L. Martin Nebraska Co. v. Culkin,* 197 F.2d 981, 984 (8th Cir.1952).

The employees were certainly in no better position to determine when work would become available for them and to report to work only when the customer flow was sufficient to justify putting them on the clock. Because neither employer or employee knew when work would become available, employees were not allowed to leave and return at a specific time. Under the facts and circumstances presented in this case, the time spent waiting was not long enough to enable the employees to use the time effectively for their own purposes. 29 C.F.R. § 785.16 (1985).

The inevitable result was that employees were forced to wait at the business establishment, either in the breakroom or in their cars within hailing distance of the establishment, if they wanted to work. Accordingly, these employees were engaged to wait. *See* 29 C.F.R. § 785.15 (1985).

Viewing the totality of the circumstances, the question can be resolved by determining whether the time spent waiting by the employee is predominately for the employer's benefit or the employee's benefit. If it is a benefit to the employer to have the employee in a standby capacity, the waiting time is compensable. As a corollary to this if the time spent waiting constitutes a detriment to the employee, it is most likely compensable time. (Citations omitted.)

*Donovan v. 75 Truck Stop, Inc.*, 92 L.C. 44,080, 44,088 (M.D.Fla.1981).

In *Donovan*, the court held that the employer had violated the Act by requiring truck washers to arrive at work at a certain time, but were not allowed to clock in until there was a truck to be washed. Although the employer in that case was more flagrant by forcing his truck washers to clock out as soon as the truck was washed and were not allowed to clock back in until another truck arrived, it is clear that in both cases, the employees were expected to remain on the premises during period of inactivity, whether it be before work is considered to have started or in periods of lax activity.

This Court finds that the time spent waiting for specific tasks to be assigned to the cooks, busers, dishwashers and waitresses was compensable under the Act. These employees were able and willing to perform their assigned duties once they arrived at the defendant's business establishment in accordance with the defendant's weekly schedule. It was of no fault of the employee that there was less work for him or her to perform until some time had elapsed and the customer flow was better. Thus, the time spent after the part-time employee arrived according to the defendant's work schedule and was not placed on compensable time until instructed to clock in by the employer was not preliminary time, and the part-time employees had actually been engaged to wait. It was to the employer's benefit to have a ready and willing work force available when customers arrived expecting speedy and efficient food service.

As stated above, this case was bifurcated and liability is only being decided in this opinion. The evidence was insufficient to determine damages suffered by the plaintiffs. However, from the evidence presented on November 4, 1985, it appears that the busers, dishwashers, cooks and waitresses experienced approximately 30 minutes of waiting time every day except one per week which they were scheduled to work. In other words, these employees started to work as scheduled one day per week. The other days, the employee was scheduled to work he or she encountered an *average* of 30 minute waiting period for the benefit of the employer for which the employee should be compensated. For example, a cook scheduled to begin work at 5:00 p.m. six days per week lost 2.5 hours of compensation per week. (Five days multiplied by 30 minutes.) A buser scheduled to work five days per week lost two hours compensable time due to the employer's scheduling policy. (Four days multiplied by 30 minutes.) This finding by the Court is, of course, not to be relied on heavily by either side as either party may very well have a more reliable computation of lost time by the scheduled hours compared to the time cards or pay sheets used by the employer.

It should be noted, that defendant, in his posttrial brief, seeks the Court to allow him to control his variable costs. Defendant argues "the employment of high school students as part-time workers, *who would otherwise not be employed,* is of benefit to them and the community." The Court quite agrees. However, this is a double-edged sword. It is part of the circumstances considered by the Court in whether these plaintiffs are those that Congress meant to protect by enacting the Act. The plaintiffs in this case were high school students, many of whom were experiencing their first employment. Defendant is to be commended for providing these people with employment opportunities. At the same time, they should be fairly treated and justly protected by the laws of the United States of America. These plaintiffs were not on an equal bargaining footing with the defendant because without this work they may very well have been unemployed. Thus, the employees, if they intended to work at all, were required to wait at the business establishment until a time as it was determined they were needed. These waiting periods were of short duration and unpredictable in length and thus could not be used effectively by the employees for their own benefit. Defendant violated the provisions of sections 6(a)(1) and 15(a)(2) by failing to compensate his employees for the

time spent waiting at defendant's place of business after they had been required to arrive. An evidentiary hearing will be held to determine the computation of back wages owed the plaintiffs, liquidated damages and attorney's fees unless the parties can agree on the amount of back wages owed, liquidated damages, attorney's fees and costs in this matter. *See* Plaintiff's Motion to Bifurcate Trial filed October 1, 1985.

Furthermore, defendant is enjoined from violating the provisions of sections 6 and 15 of the Act.

IT IS SO ORDERED.