Maria MIRELES, et al., Plaintiffs–Appellants Cross–Appellees,

v.

FRIO FOODS, INC., Defendant–Appellee Cross–Appellant.

No. 89–1076.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1990.

---

Israel M. Reyna, Tex. Rural Legal Aid, Inc., Laredo, Tex., Tex. Rural Legal Aid—Weslaco Office, Javier Riojas, Marc Linder, Weslaco, Tex., William H. Beardall, Jr., Austin, Tex., for plaintiffs-appellants cross-appellees.

Cynthia G. Schneider, Shelley Davis, Washington, D.C., for amicus—Migrant Legal Action.

Randolph P. Tower, Merrie Moore, Clemens, Spencer, Welmaker & Finck, San Antonio, Tex., for defendant-appellee cross-appellant.

Before GEE, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

The plaintiffs worked on an assembly line at a frozen food packaging facility operated by defendant Frio Foods, Inc. ("Frio"). They appeal the trial court's decision that the Fair Labor Standards Act ("FLSA")[1] does not require Frio to pay them for idle time of less than fifteen minutes or more than forty-five minutes. Plaintiffs also appeal the trial court's decisions to limit liquidated damages to $1,000.00 under 29 U.S.C. § 260 and to apply the two, rather than three, year statute of limitations in the FLSA. Frio cross-appeals that part of the decision entitling plaintiffs to compensation for idle time that is between fifteen minutes and forty-five minutes. Frio also cross-appeals the liquidated damages award. We affirm in part and reverse in part.

1. 29 U.S.C. §§ 201–219.

## I.

The plaintiffs in this case are thirty-four current or former employees of defendant, Frio, who worked on an assembly line at Frio's frozen food packaging facility. The plaintiffs were paid the minimum wage [2] for each recorded hour of work. The assembly line workers, including the plaintiffs, worked in crews. There were as many as one hundred employees in certain crews. The crews, in turn, were divided into groups. The time worked by a group was recorded on a master time card that was controlled by Frio. Each employee's pay was based on the hours recorded on the master time card.

Generally, Frio ran a day shift and a night shift. At times, a third "middle shift" was used. At the end of each crew's shift, Frio informed the members of that crew the time that they were expected to report to work the next day. Normally, the day shift was directed to report at 8:00 a.m. and the night shift was told to report at 4:30 p.m. At times, Frio would become aware that work would not be ready to begin at these scheduled times. In such instances, Frio would attempt to notify the workers to report at a later time. The later starting times would usually be on the hour, that is, 9:00 a.m., 10:00 a.m., or 6:00 p.m., 7:00 p.m. or the like.

When assembly line employees arrived at the Frio plant, they were required to sign their names on a sign-in sheet. This sign-in sheet did not identify the time at which the employees arrived at work. At times, employees would arrive at work at the scheduled starting time and would sign the sign-in sheet but would be required to wait until produce was available before actually beginning productive work. Until the employees began laboring on the assembly line, they were not "clocked in" on the master time card by their supervisor. Because they were not "on the clock," Frio did not pay them for this waiting time.

In addition, during the day, work would stop occasionally because of a delay in the arrival of produce or because of a mechanical failure in the plant. During these work stoppages, plaintiffs might be "clocked-out" and, as a result, would not be paid.

The plaintiffs brought this action claiming that their right to be paid the minimum and overtime wages required by the FLSA [3] had been violated as a result of not being paid for periods of time spent waiting to perform productive work. The parties consented to a bifurcated trial and the issue of liability was tried to the court in April 1988. On May 5, 1988, the trial court issued its Findings of Fact and Conclusions of Law in which it concluded that plaintiffs were entitled to pay for waiting times ranging from fifteen to forty-five minutes but were not entitled to pay for waiting times that were less than fifteen minutes or that were longer than forty-five minutes. The court ordered the parties to attempt to stipulate to the unpaid wages due each plaintiff for waiting periods of fifteen to forty-five minutes. The court also concluded that the two year, rather than three year, statute of limitations applied in the case.

In July 1988, the parties stipulated that the amount of unpaid wages due thirty-three of the thirty-four plaintiffs for waiting periods of between fifteen and forty-five minutes was $3,517.86. The parties were unable to agree on the unpaid wages due one remaining plaintiff and whether the plaintiffs were entitled to recover liquidated damages under 29 U.S.C. § 216(b) of the FLSA.

On December 5, 1988, the court entered an order awarding plaintiffs $1,000.00 in liquidated damages and directing the parties to stipulate to the damages of the remaining plaintiff. On December 15, the parties stipulated that the unpaid wages due the remaining plaintiff for waiting periods of between fifteen and forty-five minutes was $800.00. On December 19,

---

**2.** For the first 40 hours worked during the workweek, plaintiffs were paid $3.35 per hour. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1). For each hour over 40 worked during the workweek, plaintiffs received $5.03 per hour. *See id.* § 207(a)(1).

**3.** 29 U.S.C. §§ 206(a)(1), 207(a)(1).

1988, the trial court entered final judgment awarding all plaintiffs the stipulated total of $4,317.86 in unpaid wages and an additional amount of $1,000.00 in liquidated damages. Plaintiffs filed an appeal from the final judgment and Frio cross-appealed.

## II.

### A. *Waiting Time*

■ This appeal requires us to determine whether the plaintiffs are entitled to compensation under the minimum and overtime wage provisions of the FLSA for time spent waiting to perform productive work. Whether an employee is entitled to pay for time spent waiting depends, in large part,[4] on the manner in which the idle time is spent. If the idle time is spent predominantly for the benefit of the employer, the employee is said to be " 'engaged to be waiting' " and is entitled to compensation. *See Halferty v. Pulse Drug Co.,* 864 F.2d 1185, 1189 (5th Cir.1989) (quoting *Halferty v. Pulse Drug Co.,* 821 F.2d 261, 269 (5th Cir.), *modified,* 826 F.2d 2 (5th Cir.1987)). On the other hand, if the time primarily benefits the employee, the employee is "waiting to be engaged" and is entitled to compensation only for that time spent in productive work. *Id.* Put another way, "the critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes." *Id.* (citing 29 C.F.R. §§ 785.-16–.17).

### 1. *Waits of Between Fifteen and Forty-five Minutes*

In its Conclusions of Law the trial court stated that

the Court finds that Plaintiffs should be compensated for waiting times ranging from fifteen minutes to forty-five minutes.... Waiting times ranging from fifteen minutes to forty-five minutes are compensable because, even though Plaintiffs were not required to remain on Defendant's premises, such periods were of such short duration that Plaintiffs could not effectively use them for their own purposes.

Frio argues that this finding is clearly erroneous. We disagree.

■ The determination of whether an employee is entitled to compensation is highly fact specific. *See Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245, 1247–48 (5th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). In its Findings of Fact the trial court stated that "[m]ost of Defendant's employees commute to work as the plant is not located near their homes. The nearest store to the plant is one and a half to two miles away." In addition, testimony presented at trial suggests that it would have been difficult for the employees to effectively use short periods of time for their own personal benefit. In light of the facts and circumstances of this case, *see* 29 C.F.R. § 785.16, it was not clear error for the trial court to find that the plaintiffs could not use waiting times of between

---

**4.** In addition, it may be that compensable time is defined by an agreement between the employee and the employer. In those cases cited by the parties in which this court has found that an agreement between the parties establishes the time for which the employee is entitled to compensation, the waiting periods in question have been for extended periods of time during which the employee had the opportunity to exercise considerable personal freedom in pursuit of private interests. *See Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir.1989); *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir.1987); *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245 (5th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). The facts in the instant case are entirely different.

The trial court did find that there was an agreement between plaintiffs and Frio. The significance of the agreement as to compensable time, however, is unclear in light of the court's conclusions of law and the reasons given by the court for its conclusions. Our reading of the trial court's Findings of Fact and Conclusions of Law is that the agreement did not play a role in the court's determination of compensable time. Certainly, the agreement could not serve to waive the right that any employee has to a minimum wage and to overtime pay under the FLSA. *See Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981). For these reasons, we find it unnecessary to determine whether it was significant for the court to find that there was an agreement between the parties.

fifteen and forty-five minutes effectively for their own purposes. We believe the court's findings of fact and the record fully support the court's conclusion that the plaintiffs are entitled to compensation for this idle time.

Frio also contends that the waiting to be engaged doctrine, as interpreted by this court, indicates that the trial court erred in finding waiting times of fifteen to forty-five minutes compensable. In support of its position, Frio cites several cases decided by this court where we found that employees were not entitled to compensation for all of their time spent waiting. *See Halferty*, 864 F.2d at 1189; *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 374–75 (5th Cir.1987); *Rousseau*, 805 F.2d at 1248–49. However, these cases present facts so distinct from those now before us that we find them unpersuasive.

For instance, in *Halferty*, the plaintiff worked as a telephone dispatcher in her home from 5:00 p.m. until 8:00 a.m. *Halferty*, 864 F.2d at 1187. She was required to answer a few telephone calls each night but otherwise was allowed "to pursue personal, social, and business activities. For example, she could and did eat, sleep, watch television, entertain guests, babysit, and do laundry." *Id.*

In *El Paso*, the plaintiffs were "on-call" from 4:00 p.m. until 7:30 a.m. at their home to respond to emergency alarms that indicated a problem on their employer's natural gas pipeline system. *El Paso*, 826 F.2d at 370. Alarms were infrequent and the employees normally were able to sleep eight hours a night and otherwise enjoy time with their families during this "on-call" time. *Id.* at 370 n. 3. The employees could freely "eat, sleep, entertain guests, watch television, or engage in any other personal recreational activity...." *Id.* at 370.

In *Rousseau*, the employees were required to spend seven full days working and living on their employer's barges. *Rousseau*, 805 F.2d at 1247. While required to remain on board the barge during their off-duty time, after completing their work shift plaintiffs rarely did any productive work. *Id.* at 1248. Rather, " 'the

plaintiffs were free to sleep, eat, watch television, watch VCR movies, play ping-pong or cards, read, listen to music, etc.' " *Id.* (quoting *Rousseau v. Teledyne Movible Offshore, Inc.*, 619 F.Supp. 1513, 1520 (W.D.La.1985)).

In each of these cases the plaintiffs had considerable freedom for extended periods of time during which they could pursue a variety of personal interests. This court found that the plaintiffs were not entitled to compensation for the entire time spent waiting.

To the contrary, the plaintiffs in the instant case are not seeking payment for extended periods of waiting time during which they were free to watch television, relax with their families, babysit, do laundry or entertain guests. Periods of time between fifteen and forty-five minutes spent waiting by these employees, many of whom commute to their employer's plant that is located outside of town, one and one-half to two miles from the nearest store, are not periods of time spent predominantly for the benefit of the employee. The plaintiffs in our case were "engaged to wait" and are entitled to compensation for their idle time.

Finding that the plaintiffs are entitled to compensation for this idle time comports with cases decided by other courts. For instance, in *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923 (11th Cir.1987), cited with approval by this court in *Halferty*, the plaintiffs, assembly line workers at their employer's chicken processing plant, were entitled to pay for time spent waiting when the line was shut down. The trial court had found that the employees needed at least one hour to use the time effectively for their own purposes. *Id.* at 925. The Eleventh Circuit noted that there is "sufficient support in the record to preclude us from concluding that the district court was clearly erroneous" in finding that the employees need at least one hour to use waiting time effectively for their own purposes. *Id.* at 929 n. 6.

In *Brock v. DeWitt*, 633 F.Supp. 892 (W.D.Mo.1986), also cited with approval by this court in *Halferty*, restaurant workers

were required to report to work at a scheduled time. *Id.* at 893. After reporting to work, employees would wait in a room until their employer determined that there was enough business to justify "clocking in" the employees. *Id.* The *DeWitt* court held that the employees were entitled to compensation for the time spent waiting because they waited not "for any purpose of their own, but for their employer's benefit." *Id.* at 895. In the instant case, the trial court's finding that plaintiffs were entitled to compensation for waiting times of between fifteen and forty-five minutes because these waiting times "were of such short duration that Plaintiffs could not effectively use them for their own purposes," if one of fact, is not clearly erroneous, and if one of law, is not in error. *Cf. Halferty,* 864 F.2d at 1189.

### 2. *Waits Longer Than Forty-five Minutes*

■ In its Conclusions of Law, the trial court stated that

[w]aiting times greater than forty-five minutes are not compensable because Plaintiffs were not required to remain on Defendant's premises during such periods and could use such periods effectively for their own purposes.

Plaintiffs contend that the trial court clearly erred in finding that they were not required to remain on Frio's premises during waiting times that were longer than forty-five minutes. Plaintiffs do not, however, contest the trial court's determination that they could effectively use this time for their own purposes if they were not required to remain on Frio's premises. At trial contradictory testimony was presented on the issue of whether plaintiffs were required to remain on Frio's premises. The trial court apparently credited the testimony of Frio's witnesses. Findings based on witness credibility determinations are subject to great deference on appeal. *See*

*Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The record in its entirety indicates that the trial court's finding on the matter is plausible and not clearly erroneous. *See id.* 105 S.Ct. at 1511.

### 3. *Waiting Times Less Than Fifteen Minutes*

In its Conclusions of Law the trial court stated that

[w]aiting times less than fifteen minutes are not compensable because Plaintiffs were either not clocked out during such times or were reasonably required to wait while work commenced.

Plaintiffs contend that they should be compensated for time spent waiting "off the clock" that is less than fifteen minutes. We agree.

■ Whether idle time is compensable depends on whether the employees are able to effectively use the time for their own purposes, not on the "reasonableness" of the wait. *See Halferty,* 864 F.2d at 1189. The trial court found that waiting periods of between fifteen and forty-five minutes were of such a short duration that plaintiffs could not effectively use that time for their own purposes. By definition, waiting periods of less than fifteen minutes *must* be of such short duration that plaintiffs cannot effectively use the time for their own purposes. Whether the wait of less than fifteen minutes occurred at the beginning of a shift, which most apparently did, or during the shift is immaterial;[5] the plaintiffs are entitled to be compensated for periods of time they spend waiting that they cannot effectively use for their own purposes. *See Cole,* 824 F.2d at 924–25 (employees entitled to compensation for time spent waiting *during* day due to assembly line shut-down); *DeWitt,* 633 F.Supp. at 893, 896 (employees entitled to compensation for time spent waiting at *beginning* of work shift).

---

**5.** The trial court found that "[i]f the work stoppage occurred during a shift and was going to last fifteen minutes or less, the employees were not clocked out and thus were compensated for time spent waiting for work to recommence." We interpret this finding as an attempt to summarize the procedure generally followed by Frio in determining whether to take employees off the clock. Contrary to this finding, the record does indicate that, at times, employees were "clocked out" during a shift for less than fifteen minutes.

■ In its brief on appeal, Frio argues that waits of less than fifteen minutes at the beginning of a work shift are not compensable under the *de minimis* doctrine. The *de minimis* rule provides that an employer, in recording working time, may disregard "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes." 29 C.F.R. § 785.47. The *de minimis* rule applies only where the time involved is

> of a few seconds or minutes duration, and where the failure to count such time is due to ... industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

*Id.*

Plaintiffs are not seeking compensation for periods of time spent waiting outside the workday.[6] Rather, plaintiffs contend that they are entitled to pay for time spent waiting during the workday that they are not able to use effectively for their own purposes.

■ The facts reveal that Frio specifies a time for its employees to arrive at work. When the employees arrive, they place their names on a sign-in sheet. On many occasions, they are required by Frio to wait before they begin actual productive work. These waits are often caused by a delay in the arrival of produce or a mechanical problem at the plant. Until they begin productive work, they are not "clocked in" on the master time card that is controlled by Frio and, therefore, are not paid for this idle time. Where an employee is required by his employer to report to work at a specified time, and the "employee is there at that hour ready and willing to work but" is

unable to begin work for a period of time for some reason beyond his control, the employee is engaged to wait and is entitled to be paid for the time spent waiting. 29 C.F.R. § 790.7(h); *see Halferty,* 864 F.2d at 1189.

Nor can Frio successfully claim that these waiting periods of less than fifteen minutes are *de minimis* because of administrative impracticalities. The method of tracking the employee's actual work time currently employed by Frio could continue to be used, with only minor changes, if the master time card was always "punched in" at the scheduled start time.

Because Frio specifies the hour at which its employees are to report to work, employees who are at the plant at that assigned time, ready and willing to perform productive work, should be compensated for time they spend waiting for work to begin that is less than fifteen minutes. There is no administrative impracticality barring Frio from doing so. On these facts the *de minimis* rule does not apply to waits of less than fifteen minutes.

### B. *Liquidated Damages*

The FLSA provides that

> [a]ny employer who violates the provisions of section 206 or section 207 ... *shall* be liable to the ... employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added). The duty of the court to award liquidated damages in an amount equal to the unpaid wages due under sections 206 and 207 of the FLSA are ministerial, not discretionary, under the terms of section 216. However, this *ministerial duty is made discretionary* by 29 U.S.C. § 260, which provides that

---

**6.** 29 C.F.R. § 790.6(b) provides the following definition of "workday."

> If an employee is required to report at the actual place of performance of his principal activity at a certain specific time, his "workday" commences at the time he reports there for work in accordance with the employer's

> requirement, even though through a cause beyond the employee's control, he is not able to commence performance of his productive activities until a later time. In such a situation the time spent waiting for work would be part of the workday....

if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith *and* that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216....

*Id.* § 260 (emphasis added). At the time the trial court entered its order of December 5, 1988, awarding plaintiffs $1,000.00 in liquidated damages, the parties had stipulated that the amount of unpaid wages due thirty-three of the thirty-four plaintiffs for waiting periods of between fifteen and forty-five minutes was $3,517.86. In exercising its discretion under 29 U.S.C. § 260[7] by ordering Frio to pay plaintiffs only $1,000.00 in liquidated damages, the trial court stated that while Frio's failure to compensate "[p]laintiffs for waiting times of 15 to 45 minutes may have been in good faith, the Court concludes that such failure was not reasonable."

■ Plaintiffs claim that liquidated damages in an amount equal to the unpaid wages due them must be awarded under 29 U.S.C. § 216(b) unless the trial court finds that the act of the employer giving rise to the suit was *both* in good faith *and* reasonable. *See* 29 U.S.C. § 260. Because the trial court did not make an affirmative finding that Frio acted in good faith, and also because the trial court found Frio's actions not to be reasonable, plaintiffs contend that they are entitled to the full amount of liquidated damages as required by 29 U.S.C. § 216(b). A review of the cases applying section 260 indicates that the plaintiffs are correct.

An employer found liable under section 206 or section 207 has the "substantial burden" of proving to the satisfaction of the trial court that its acts giving rise to

the suit are *both* in good faith *and* reasonable. *See LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1263 (5th Cir.1986) ("[T]o be relieved of liability for liquidated damages, an employer must demonstrate *both* good faith *and* reasonable grounds for believing that it was not violating the Act." (emphasis added)); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468 (5th Cir.1979) (to avoid payment of liquidated damages, employer has *"substantial burden* of persuading the court by proof that his failure to obey the statute was *both* in good faith *and* predicated upon ... reasonable grounds" (emphasis added)); *see also* 29 C.F.R. 790.22(b). Because the trial court did not find Frio acted both in "good faith" and "reasonably" in its efforts to comply with the law, it erred in not awarding liquidated damages equal to the full amount of unpaid wages due plaintiffs under 29 U.S.C. §§ 206 and 207.

■ Frio contends that the award of $1,000.00 of liquidated damages is improper because the court erred in its conclusion that Frio had not acted reasonably. As noted above, an employer seeking to avoid a liquidated damages award required by 29 U.S.C. § 216(b) has the "substantial burden" of proving to the trial court that its attempt to comply with the statute was in good faith and reasonable. In its Order, the trial court noted that the *only* evidence presented at trial on this issue was that Frio's general manager had discussed minimum wage requirements with the Texas Employment Commission, an agency apparently not involved in enforcing the FLSA, and reviewed some "brochures and pamphlets" on this topic. The trial court obviously concluded that by this proof Frio did not meet its "substantial burden." Our review of the record indicates that the trial court's finding that Frio's failure to comply with the statute was not reasonable is not clearly erroneous.[8] *See Laffey v. North-*

7. In its Order the court inadvertently stated that it was exercising its discretion pursuant to 29 U.S.C. § 216(b). The trial court's discussion of the law indicates a correct understanding that it may exercise its discretion only under § 260.

8. Even if a trial court is satisfied that an employer acted both in good faith and reasonably, it may still award liquidated damages at its discretion in any amount up to that allowed by 29 U.S.C. § 216(b). *See McClanahan v. Mathews,* 440 F.2d 320, 323 (6th Cir.1971) (cited with

*west Airlines, Inc.*, 567 F.2d 429, 464 (D.C. Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

### C. *Statute of Limitations*

The statute of limitations governing recovery of unpaid wages provides that

every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a *willful* violation may be commenced within three years after the cause of action accrued. . . .

29 U.S.C. § 255. The trial court concluded that the two year statute of limitations applied because Frio did not willfully violate the statute as the term "willfully" has been interpreted by the courts.

■ The standard of willfulness that has been recently adopted by the Supreme Court for purposes of section 255 is that set forth in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985)—the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Simply failing to seek legal advice concerning its pay practice does not evidence a willful violation of the statute. *Id.* 108 S.Ct. at 1682. Nor is a negligent violation of the statute a willful violation. *Id.* And even though an employer may act unreasonably, as the trial court found Frio had, its actions do not necessarily constitute a willful violation. *Id.* at 1682 n. 13.

■ Decisions by this court applying the standard set forth in *Thurston* have emphasized the "reckless disregard" aspect of the test. *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir. 1988); *Halferty v. Pulse Drug Co.*, 826 F.2d 2, 3–4 (5th Cir.1987); *Peters v. City of Shreveport*, 818 F.2d 1148, 1167–68 (5th Cir.1987), *cert. dismissed*, 485 U.S. 930, 108 S.Ct. 1101–02, 99 L.Ed.2d 264 (1988). The trial court concluded that because Frio had

approval by this court in *Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. Unit A Oct. 1981)).

discussed minimum wage requirements with the Texas Employment Commission and had reviewed some "brochures and pamphlets" on the topic that Frio had not acted with "reckless disregard." We conclude that the trial court's finding that Frio's violation of the statute was not willful is supported by the record and is not clearly erroneous. The two year statute of limitations is proper.

### III.

We AFFIRM the trial court's judgment awarding plaintiffs unpaid wages for waiting periods of between fifteen and forty-five minutes and denying them wages for waiting periods exceeding forty-five minutes. We also AGREE with the trial court's decision that the two year, rather than three year, statute of limitations is applicable in this case. We REVERSE the trial court's judgment denying plaintiffs unpaid wages for waiting periods of less than fifteen minutes and limiting liquidated damages to less than the full amount of due but unpaid wages. We REMAND the case for a determination of damages consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART; CASE REMANDED.