**REVISED December 1, 2017**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 9, 2017

Lyle W. Cayce
Clerk

No. 16-41493

DARWIN KEITH BRIDGES; RODRIGO GONZALEZ; JESUS ALANIS,

Plaintiffs - Appellants

v.

EMPIRE SCAFFOLD, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and KING and JONES, Circuit Judges.

KING, Circuit Judge:

Defendant–Appellee Empire Scaffold, LLC, employed Plaintiffs–Appellants Darwin Keith Bridges, Rodrigo Gonzalez, and Jesus Alanis to erect and dismantle scaffolding for the Motiva Crude Expansion Project. Bridges, Gonzalez, and Alanis sued Empire for failing to compensate them for pre-shift wait time under the Fair Labor Standards Act. The district court granted summary judgment to Empire, effectively holding that the pre-shift wait time at issue here is excluded from compensation under the Portal-to-Portal Act. We AFFIRM.

No. 16-41493

**I.**

Motiva Enterprises, LLC ("Motiva"), is an oil refining and marketing joint venture that is owned by affiliates of Shell Oil Company and Saudi Aramco. Motiva undertook the Crude Expansion Project ("CEP") in order to expand its Port Arthur Refinery and more than double the refinery's previous capacity. At its peak, the project involved more than 14,000 workers. From approximately December 2010 to May 2012, Empire Scaffold, LLC ("Empire"), was hired to erect and dismantle scaffolding at the refinery as a part of the CEP.[1] Empire's employees worked in teams with six to ten individuals. Empire compensated its employees for scheduled shift times of 7:00 a.m. to 5:30 p.m. on Monday through Thursday and 7:00 a.m. to 3:30 p.m. on Friday.

Empire required its employees to take buses from the Port Arthur Road Parking Lot to the refinery on a first-come, first-serve basis between 5:00 a.m. and 6:15 a.m. Empire's policy was that an employee who missed the last bus at 6:15 a.m. would not be able to work until the next day. Empire did not allow the employees to access the refinery by any other means, such as riding in another contractor's van. The purpose of this policy was to prevent chaos and congestion of vehicles at the refinery, as well as to keep the refinery secure. The bus ride to the refinery took approximately 20 to 30 minutes. The bus dropped the employees off at Empire's lunch tents, which were about three-quarters of a mile inside the refinery and a few hundred yards away from the live units where the employees performed scaffolding. Empire required its employees to sign in at the lunch tents. Empire did not mandate anything else—such as work at the live units, safety meetings, or completing the job safety analysis paperwork—prior to 7:00 a.m. At 7:00 a.m., a horn sounded,

---

[1] Formally, Bechtel-Jacobs CEP Port Arthur Joint Venture contracted with Empire to provide services to Motiva.

2

commencing the shift time. Empire required its employees to wear personal protection equipment ("PPE") upon reporting to work at the live units. The PPE included hard hats, goggles, fire-retardant clothing, steel-toed boots, $H_2S$ monitors,[2] and safety glasses.

In November 2012, Empire's employees and hundreds of workers for other contractors and subcontractors related to the CEP commenced litigation against their employers. These workers generally asserted that, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), they were not paid for compensable time. In May 2013, the district court severed some of the claims related to the CEP and created the instant action against Empire. In the Fourth Amended Complaint, Darwin Keith Bridges, Rodrigo Gonzalez, and Jesus Alanis were listed as plaintiffs in this action, along with sixty other workers. About ten months after the severance, the district court referred the case to a magistrate judge.

The workers then filed a motion for partial summary judgment, arguing that as a matter of law, Empire violated the FLSA by failing to compensate its workers for pre-shift time and to properly record their work hours. Empire also filed for summary judgment, contending that (1) it is not required under the FLSA and Portal-to-Portal Act of 1947 to compensate its workers for time spent riding the bus to the CEP, for pre- and post-shift activities, and for pre-shift wait time; (2) its record-keeping was proper; (3) the workers had not met their burden of proof with respect to their claims and damages; and (4) summary judgment was appropriate for workers who did not claim that they performed certain work activities outside of their shifts.

---

[2] $H_2S$ monitors can detect hydrogen sulfide, which is a byproduct of refining crude oil. According to Empire's employees, a $H_2S$ monitor was smaller than a deck of cards and could be clipped onto their attire.

No. 16-41493

In March 2016, the magistrate judge recommended that (1) summary judgment be granted against all of the workers' claims, except for Rene Chaires's claim, for compensable time riding the bus to the CEP, (2) summary judgment be granted against all of the workers' claims for time spent donning and doffing PPE, (3) summary judgment be granted in favor of Empire on the improper timekeeping claim, and (4) summary judgment be denied with respect to all of the workers' claims—except for the claims of Bridges, Gonzalez, and Alanis—for compensation for pre- and post-shift activities. Specifically, with respect to Bridges, Gonzalez, and Alanis, the magistrate judge found that they did not engage in pre-shift activities that could be considered compensable, such as scaffolding at the live units, attending safety meetings, and preparing job safety analysis paperwork. Both sides objected on several issues, but the district court adopted the magistrate judge's report and recommendation, overruling all objections.

In April 2016, Bridges, Gonzalez, and Alanis appealed the district court's decision, but this court, in August 2016, dismissed the appeal for lack of jurisdiction because final judgment had not been entered. Subsequently, they sought reconsideration of the district court's grant of summary judgment in favor of Empire or, alternatively, entry of final judgment as to their claims. The district court denied their motion for reconsideration but issued final judgment with respect to their claims. Bridges, Gonzalez, and Alanis then timely appealed. They now argue that their pre-shift wait time at the refinery is compensable under the FLSA.

## II.

The issue in this case is whether the Portal-to-Portal Act excludes the pre-shift wait time of Bridges, Gonzalez, and Alanis from being compensable under the FLSA. We review the district court's grant of summary judgment de novo. *Halle v. Galliano Marine Serv., L.L.C.*, 855 F.3d 290, 293 (5th Cir. 2017)

4

No. 16-41493

(citing *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016)). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We begin with an articulation of the relevant substantive law.

Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked over 40 hours in each workweek. 29 U.S.C. §§ 206(a), 207(a). Employers that violate these provisions can be held civilly liable for back-pay, liquidated damages, and attorney's fees. *Id.* §§ 216(b)–(c). As the FLSA did not define "work" or "workweek," the Supreme Court issued two decisions in the 1940s that interpreted these terms broadly. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91 (1946) (defining "workweek" to include "all time during which an employee is necessarily required to be on the employer's premises"); *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (defining "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business"). In 1947, Congress passed the Portal-to-Portal Act in order to curb the flood of litigation that followed these decisions. *See Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516–17 (2014). This Act exempts employers from liability for claims based on the following activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court determined that the Portal-to-Portal Act does not exempt "activities performed either before or after the regular work shift . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by" § 254(a)(1) (i.e., walking, riding, or traveling to and from the place of performance). *Id.* at 256. The Court has interpreted the term "principal activity or activities" in the statute to include all activities that are an "integral and indispensable part of the principal activities." *Busk*, 135 S. Ct. at 517 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005)); *see also* 29 C.F.R. § 790.8(b) (embracing this interpretation of the term). "An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 135 S. Ct. at 517.

The Court has identified some activities that satisfy this test. In *Steiner*, it held that changing clothes and showering was integral and indispensable to the workers' principal activity of manufacturing automotive-type wet-storage batteries, which involved dangerous chemicals and fumes.[3] 350 U.S. at 249–50, 256. In *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), it concluded that

---

[3] In *Steiner*, the employer conceded that the clothes-changing and showering activities of the employees were integral and indispensable to the performance of their productive work but contended that these activities were not principal activities under the Portal-to-Portal Act. 350 U.S. at 251–52. The Court rejected the employer's argument and instead agreed with the Sixth Circuit that principal activities under the Act embraced activities that are an integral and indispensable part of the principal activities. *See id.* at 252–53.

No. 16-41493

knife-sharpening activities were integral and indispensable to the employees' work at the meat-packing plant. *Id.* at 262–63. The knives needed to be sharpened "for the proper performance of the work," and a "dull knife would slow down production." *Id.* at 262.

The Court has also decided that certain activities do not fulfill the test. In *IBP*, it held that time spent waiting to don protective gear (not the time spent actually donning the gear) was not integral and indispensable to the production workers' principal activities of cutting and bagging meat. *See* 546 U.S. at 30, 42. The predonning wait time was "two steps removed from the productive activity on the assembly line." *Id.* at 42. In *Busk*, the Court concluded that mandatory security screenings were not integral and indispensable to the warehouse employees' work of retrieving and packaging products for shipment to customers. *See* 135 S. Ct. at 515, 518. It emphasized that the test turns on whether the activity in question is "tied to the productive work that the employee is *employed to perform.*" *Id.* at 519.

Here, the compensability of the pre-shift wait time of Bridges, Gonzalez, and Alanis under the Portal-to-Portal Act turns on whether this wait time was integral and indispensable to the principal activities which they were employed to perform. In this context, the employees' principal activities—as Empire has acknowledged—included erecting and dismantling scaffolding (i.e., the substantive work that Empire was hired to do), safety meetings, and completing joint safety analysis paperwork. Empire's policy was not to begin such activities until after 7:00 a.m., during the compensated shift time. While reporting to the right location *on time* at 7:00 a.m. was intrinsic to efficiently implementing the productive work, the time spent *waiting* for principal activities to begin at 7:00 a.m. was not. The waiting itself was neither tied to nor necessary to the erection and dismantling of scaffolding—the work that the

7

No. 16-41493

Appellants were employed to perform. Therefore, the wait time here is similar to the predonning wait time in *IBP* and thus not compensable.

Additionally, unlike some of their coworkers, Bridges, Gonzalez, and Alanis have not claimed that they participated in principal activities prior to 7:00 a.m. Alanis testified that during the pre-shift wait time, he did "[n]othing" and would "chat with [his] colleagues." Bridges stated that he used his time to smoke. Gonzalez testified that he just sat down and waited for 7:00 a.m. Thus, none of these three employees has created a genuine dispute of material fact with respect to performing principal activities prior to 7:00 a.m.

The Appellants argue that the predominant benefit test is the correct legal framework to apply in analyzing the compensability of the pre-shift wait time. They base their contention on four cases: (1) *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); (2) *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); (3) *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir. 1990); and (4) *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994). The predominant benefit test focuses on whether the wait time primarily benefits the employer. *See, e.g.*, *Mireles*, 899 F.2d at 1411 (citing *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir. 1989)). Under this test, when an employer requires an employee to report at a specific time and the employee cannot perform work at that time for some reason beyond his control, the wait time predominantly benefits the employer. *See, e.g.*, *id.* at 1414 (first citing 29 C.F.R. § 790.7(h); then citing *Halferty*, 864 F.2d at 1189). Bridges, Gonzalez, and Alanis contend that Empire required its employees to report to the refinery before the 7:00 a.m. shift and that the wait time predominantly benefited the employer because employees were surrounded by hazardous conditions and had to follow safety procedures.[4]

---

[4] On appeal, Bridges, Gonzalez, and Alanis do not challenge the compensability of the time spent riding the bus or donning their PPE. They do contest the district court's finding that the handling and use of their PPE was not tied to productive work, but it appears that

No. 16-41493

We are not persuaded by their argument. *Armour*, *Skidmore*, *Mireles*, and *Vega* were all decided prior to *Busk*, and they are inapposite here. *Busk* conveys that whether an activity is integral and indispensable to an employee's principal activities does not turn on whether the activity benefits the employer or whether the employer requires the activity. *See Busk*, 135 S. Ct. at 519; *see also Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015) ("Under [*Busk*], it is not enough to make activity compensable under the [FLSA] that the employer requires it and it is done for the benefit of the employer."). The Court expressly stated that "[i]f the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal–to–Portal Act was designed to address."[5] *Busk*, 135 S. Ct. at 519. The Court went on to state that "[a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id.*

---

they contest this finding in order to bolster their contention that having on their PPE provides support that their wait time is compensable. As Bridges, Gonzalez, and Alanis focus on the compensability of only the pre-shift wait time in their brief, any argument concerning the compensability of the time spent donning their PPE is forfeited. *See Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008) ("'A party waives an issue if he fails to adequately brief it' on appeal." (quoting *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008))).

[5] The Department of Labor regulation 29 C.F.R. § 790.7(h) states:

> Where, however, an employee is required by his employer to report at a particular hour at his workbench or other place where he performs his principal activity, if the employee is there at that hour ready and willing to work but for some reason beyond his control there is no work for him to perform until some time has elapsed, waiting for work would be an integral part of the employee's principal activities.

It is unclear how *Busk* affects this regulation, but we need not and do not decide that today. The factual scenario at hand does not fall within the scope of 29 C.F.R. § 790.7(h). While Empire required its employees to take a bus to the refinery by the latest at 6:15 a.m., it did not require them to be at the live work sites or other places where principal activities were performed until 7:00 a.m. Here, Bridges, Gonzalez, and Alanis were waiting prior to their scheduled shifts, not during their shifts. *Cf. Mireles*, 899 F.2d at 1410, 1414.

9

No. 16-41493

*Armour* and *Skidmore* were two Supreme Court cases that focused on the compensability of firefighters' on-call wait time under the FLSA. In *Armour*, the Court articulated a test for determining whether wait time is compensable; that test depends on "[w]ether time is spent predominantly for the employer's benefit or for the employee's." 323 U.S. at 133. In *Skidmore*, the Court stated that whether wait time is compensable is a question of fact. 323 U.S. at 136–37. These cases are inapplicable to the current case for two reasons. First, *Armour* and *Skidmore* were both decided prior to *Busk* and the Portal-to-Portal Act. Second, they are factually distinguishable. In both cases, the firefighters were employed to wait in order to respond to fires. *See Armour*, 323 U.S. at 127; *Skidmore*, 323 U.S. at 135. Here, Bridges, Gonzalez, and Alanis were not employed to wait for their shifts to begin at 7:00 a.m.

In *Mireles*, we held that assembly line workers' wait time at a frozen food packaging facility was compensable if the employees could not use that time effectively for their own purposes. *See* 899 F.2d at 1410–14. *Mireles* is inapposite here because it involved wait time *during* the workers' scheduled shifts and the Portal-to-Portal Act was not at issue. *Id.* at 1410, 1414. In contrast, this case involves wait time prior to the employees' scheduled shifts, and the parties are debating over the applicability of the Portal-to-Portal Act. Finally, in *Vega*, we remanded the case to the district court so that additional findings related to the purpose of the workers' wait time prior to picking chiles could be made in order to determine whether the wait time could be considered a principal activity under the Portal-to-Portal Act. 36 F.3d at 426–27. There is some language in *Vega* that suggests whether an activity is covered under this Act turns on whether the wait predominantly benefits the employer. *See id.* at 425–26. However, that language was not necessary to our actual disposition of *Vega* and has been effectively abrogated by *Busk*. *See* 135 S. Ct. at 519.

10

No. 16-41493

In sum, the integral and indispensable test is the relevant test for determining the compensability of the Appellants' pre-shift wait time. As this preliminary wait time is not intrinsic to their principal activities, it is not compensable under the Portal-to-Portal Act.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.