IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))))

No. 06-50092

)))))))))))))))))))))))))))))

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2007

Charles R. Fulbruge III
Clerk

ARTHUR ELIZONDO,

Plaintiff-Appellee,

v.

FLETCHER PARKS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas
No. 04-CV-1025

---

Before DAVIS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal arises from Plaintiff-Appellee Arthur Elizondo's
("Elizondo") suit alleging that Defendant-Appellant Fletcher Parks
("Parks") retaliated against him in violation of the First
Amendment. Elizondo worked as a Business Development Specialist in
the University of Texas at San Antonio's ("UTSA") Minority Business
Development Center ("MBDC") from 1987 until his termination on
November 11, 2002. In the autumn of 2002, the MBDC experienced a

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT RULE
47.5.4.

budget shortfall.  Parks, the director of the MBDC and Elizondo's supervisor, met with a number of UTSA officials to discuss ways to resolve the shortfall.  One option was to fire two employees.  At the meeting, Judy Ingalls, director of UTSA's Small Business Development Center ("SBDC"), devised an alternative plan in which Parks would temporarily transfer two of his employees--Luke Ortega ("Ortega") and Elizondo--to the SBDC.  Under the plan, Elizondo and Ortega would continue to serve their MBDC clients, without charging the customary fee, and they would assist the SBDC in increasing minority participation in contracting/procurement and technology. Ingalls sought and received approval for the plan from the Small Business Administration ("SBA").[1]

On October 18, 2002, Parks met with Elizondo and Ortega and informed them about the temporary reassignment.  Ortega accepted the reassignment, but Elizondo refused.  According to Elizondo's affidavit, he "immediately informed Mr. Parks that such a commingling of funds from two separate federal grants was illegal and fraudulent."[2]  Elizondo believed that the plan was illegal because it entailed using a SBA grant to pay for his salary and

---

[1] The SBDC is funded in part by a grant from the SBA.  A large percentage of the MBDC's budget (67% in 2002) comes from a Commerce Department grant.

[2] Parks denies that Elizondo made this statement at the meeting.  Elizondo also contends that he called Raquel Suniga, an SBA employee, on a Commerce Department hotline concerning the alleged illegal activity.  He further maintains that he contacted numerous attorneys about how to report the alleged fraud.

2

Ortega's salary even though they would continue to work on behalf of the MBDC.

Parks gave Elizondo additional time to change his mind and accept the reassignment, but Elizondo persisted in refusing the transfer. In a November 11, 2002 letter, Parks terminated Elizondo's employment with the MBDC because of Elizondo's "failure to cooperate with [his] supervisor, refusal to follow instructions and refusal to perform [his] assigned duties."

Elizondo filed suit against UTSA and Parks on November 10, 2004, alleging First Amendment retaliation, among other claims.[3] Parks moved for summary judgment on the First Amendment retaliation claim on the ground that qualified immunity shielded him from liability. The district court denied his motion. Parks now appeals the district court's denial of his qualified immunity defense.

We have jurisdiction over this appeal because the denial of qualified immunity is immediately appealable under the collateral order doctrine. Martinez v. Tex. Dep't of Criminal Justice, 300 F.3d 567, 576 (5th Cir. 2004). Because this appeal concerns the district court's denial of summary judgment based on qualified immunity, we have jurisdiction "only to the extent that the appeal concerns the purely legal question whether the defendant is entitled

_____

[3] Elizondo also brought claims against both Parks and UTSA under the False Claims Act, 31 U.S.C. § 3730(h), and the Texas Whistleblower Act, Tex. Gov't Code Ann. § 554.001 et seq (Vernon 1988). The district court dismissed all claims against UTSA, and it dismissed all claims against Parks except for First Amendment retaliation.

3

to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record." Modica v. Taylor, 465 F.3d 174, 179 (5th Cir. 2006) (quoting Kinney v. Weaver, 367 F.3d 337, 347 (5th Cir. 2004) (en banc))(alterations omitted). In other words, "we do not review the district court's determination that a genuine factual dispute exists; instead, we 'consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment.'" Id. (quoting Kinney, 367 F.3d at 348). "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." Kinney, 367 F.3d at 348.

"The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." Wallace v. County of Comal, 400 F.3d 285, 289 (5th Cir. 2005) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Once the defendant invokes qualified immunity, the plaintiff bears the burden of demonstrating the inapplicability of the defense. Modica, 465 F.3d at 179. The qualified immunity analysis requires a two-step inquiry. Id. First, we must determine whether Elizondo's allegations, if true, establish a violation of a clearly established right. Id. Second, if Elizondo has alleged such a violation, we must then decide whether the conduct was objectively reasonable in

4

light of clearly established law at the time of the incident.  Id. "Even if the government official's conduct violates a clearly established federal right, the official is nonetheless entitled to qualified immunity if [his] conduct was objectively reasonable." Id.

In this case, the district court denied Parks's claim of qualified immunity because it determined that Elizondo's allegations, if true, established the violation of a constitutional right and that allegedly terminating Elizondo for complaining about fraud was not objectively reasonable.  The district court noted that, in order to establish a First Amendment retaliation claim, Elizondo had to demonstrate that: he suffered an adverse employment action; his speech involved a matter of public concern; his interest in commenting on matters of public concern outweighed Parks and the MBDC's interest in promoting efficiency; and his speech motivated the adverse employment action. See, e.g., Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001).  At the time that the district court ruled on Parks's summary judgment motion, it applied the correct legal framework for assessing a First Amendment retaliation claim.

After the district court rendered its decision, the Supreme Court decided Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).  In Garcetti, a First Amendment retaliation case, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First

5

Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960. Because Garcetti had not been decided at the time the district court made its ruling in this case, the district court did not have the opportunity to decide whether Elizondo was speaking pursuant to his official duties. We decline to make that determination in the first instance and therefore vacate the district court's order denying qualified immunity and remand this case for reconsideration in light of Garcetti.[4]

For the reasons stated above, we VACATE the order of the district court and REMAND Elizondo's First Amendment retaliation claim for reconsideration consistent with Garcetti.

VACATED and REMANDED.

---

[4] We express no opinion on whether Elizondo's speech was a matter of public concern.