# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2018

Lyle W. Cayce
Clerk

No. 17-40839

———————

JUAN ESPINOZA; OMAR GARZA; ALBERTO REYES; ANTONIO NARANJO; ROEL OLIVARES,

      Plaintiffs - Appellants

v.

SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,

      Defendant - Appellee

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:14-CV-115

———————

Before SMITH, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:[*]

The plaintiffs, police officers for the defendant, San Benito Consolidated Independent School District (the School District), sued the School District for various labor and retaliation claims. The district court eventually dismissed or granted the School District judgment on all but one claim. A jury found for the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40839

School District on the remaining claim. The officers appeal the district court's rulings, including some of its evidentiary rulings at trial. We affirm.

## FACTS AND PROCEEDINGS

### I. Budgetary woes and solutions

At the end of the 2011–2012 school year, the School District was experiencing budget problems stemming from legislative funding cuts and increased health insurance costs. The shortfall was substantial, in part because the legislature implemented a $5 million cut. Meanwhile, in March 2012, five officers of the School District's police department—Juan Espinoza, Omar Garza, Antonio Naranjo, Roel Olivares, and Alberto Reyes—filed a complaint with the Department of Labor (DOL), alleging violations of the wage and overtime protections of the Fair Labor Standards Act (FLSA).

Prior to August 2012, in preparation for the 2012–2013 school year, the School District created and approved a new budget that made significant cuts to multiple programs. It cut funds to and reduced eligibility for the pre-kindergarten program. It dissolved twenty-three teaching positions. It left nine maintenance positions vacant. It cut the day care program. It eliminated employee convenience leave. And, while the officers' DOL complaint was pending, it reduced the work days for all the officers in its police department from 226 days to 187 days, essentially cutting the officers' summer hours.

In addition to its immediate budgetary concerns, the School District had reason to reduce the police officers' hours. There was less need for their presence during the summer months when students were out of school. The School District's security costs were higher than those of neighboring districts. The state had recommended that 65% of the School District's budget be allocated to costs directly associated with teaching, but it had not yet managed to meet this goal. Additionally, the School District's police department had been organized with funds from a federal grant, which were exhausted in 2012.

In September 2012, after the cuts had been made, the School District realized that it would receive an additional two or three million dollars in funding because of an accounting error that was not discovered until after the new budget's approval. The School District was advised to save a portion of those funds because it was possible that they would have to be returned. These additional funds did not fully cover the shortfall.

After discovering the additional funds, the School District hired twenty-six security guards, but they were part-time employees without benefits and were significantly less expensive than the police officers. The School District also gave retention incentives and pay increases to all employees. But the School District never reinstated or increased the officers' hours; never revived the daycare program, employee convenience leave, or the dissolved teaching positions; and never filled the vacant maintenance positions.

In November 2012, the DOL completed its review of the officers' complaint and concluded that the School District had not violated the FLSA. In December 2012, the officers filed an internal grievance with the School District regarding their claim for overtime pay and the School District's decision to cut their work days, as well as some issues with their boss. Two officers, Garza and Reyes, also reached out to the local District Attorney to complain about police misconduct. In March 2013, an internal hearing officer issued an opinion that ruled against the officers on nearly all their issues. All their internal appeals to the School District's board were denied.

II.   **The officers' lawsuit and pretrial pleadings and rulings**

The five officers sued the School District in July 2014. They alleged overtime pay violations and retaliation under the FLSA, violations of the Equal Pay Act (EPA), and retaliation in violation of their First Amendment rights under 42 U.S.C. § 1983, among other claims not relevant to this appeal.

3

The School District moved to dismiss. The district court largely denied that motion, except that it dismissed the EPA claims of three of the officers after it determined they could not make out a prima facie case.

The School District then moved for summary judgment on the remaining claims. The district court granted judgment on all the officers' wage-and-hour FLSA claims and the remaining EPA claims, but denied summary judgment on the FLSA retaliation and First Amendment retaliation claims.

## III. The jury trial

A jury was empaneled, but after the officers presented their case-in-chief, the School District moved for judgment as a matter of law. The district court granted this motion in part, dismissing the officers' FLSA retaliation claims and three of the officers' First Amendment retaliation claims. Ultimately, the jury was asked to decide only whether the School District retaliated against two officers (Garza and Reyes) for their protected First Amendment activities (their complaint to the District Attorney). The jury found in favor of the School District, concluding that no adverse employment action had been taken against the officers. The officers moved for a new trial, but the court denied their motion.

The officers timely appealed, raising multiple issues.

## DISCUSSION

## I. Dismissal of EPA Claims—Naranjo, Espinoza, Olivares

This court reviews de novo an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To establish a prima facie case of discrimination under the Equal Pay Act, a plaintiff must show that he received less money but performed work in

a position requiring equal skill, effort, and responsibility under similar working conditions as a coworker of the opposite sex who is similarly situated. *See* 29 U.S.C. § 206(d)(1); *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993); *Jones v. Flagship Intern.*, 793 F.2d 714, 722–23 (5th Cir. 1986).

The district court dismissed the EPA claims of Officers Naranjo, Espinoza, and Olivares when it granted the School District's motion. Those officers argue that they successfully articulated a plausible EPA claim because they alleged Officer Martinez, a woman, was promoted and received a raise even though she had less experience and fewer credentials. The district court determined that the officers had "not demonstrated that they performed work in a position requiring equal skill, effort, and responsibility as Martinez."

The officers' complaint does not explain how their job duties were the same as Martinez's. It alleges only that she received a pay raise "even though she had less experience than [the officers]." The officers failed to plausibly allege that they and Martinez performed equal work under equal conditions with equal skill. We affirm the district court's dismissal of the three officers' EPA claims.

## II.   Summary Judgment

We review a district court's grant of summary judgment de novo. *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 225 (5th Cir. 2017). "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

### A. FLSA wage-and-hour claims

All five officers contend that the district court erred when it granted summary judgment against them on their FLSA wage-and-hour claims. The FLSA requires employers to pay certain employees no less than time-and-one-half their usual rate for all hours worked above the standard 40-hour

No. 17-40839

workweek. *See* 29 U.S.C. § 207(a)(1); *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). One method of complying with the overtime payment requirement is the "fluctuating work-week" method (FWW). "The FWW is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week." *Black*, 732 F.3d at 496. Section 207(k)(1) provides a separate exception to § 207(a), requiring instead that a law enforcement officer who works more than 171 hours in a period of 28 days receive overtime. 29 U.S.C. § 207(k)(1); *see also* 29 C.F.R. § 553.230(b).

The district court concluded that the officers failed to provide any specific facts showing that the School District violated the FLSA. Although there was testimony that they were on call 24 hours a day, the district court found that they failed to demonstrate how many hours they actually worked each pay period. According to the district court, the only evidence the officers provided to support their FLSA-violation claim was the deposition testimony of an expert, Tomi Stefanos, "stating that the [officers] were never on a fluctuating workweek [as the School District contends], but rather were on a fluctuating time period" under section 207(k)(1). But the district court found that the officers failed to explain "why such a difference is material" and failed to offer evidence of how many hours the officers worked during the "fluctuating time periods." The court also noted that it was undisputed that the DOL found no FLSA violations. Accordingly, it granted summary judgment in favor of the School District.

On appeal, the officers do not even attempt to explain their point about the FWW. Instead, they argue that their theory explaining the FLSA violation was in Stefanos's report, which the district court did not consider. They do not dispute that they failed to enter the report into summary judgment evidence as required by Rule 56(c). They argue, however, that because they attached the

report to a separate motion that the district court considered, the court should have looked at the report.

This court has held that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Thus, the district court did not err when it declined to consider Stefanos's report and determined there was no factual dispute regarding the officers' FLSA wage-and-hour claims. The DOL ruled against the officers. The School District submitted evidence showing the officers were paid using the FWW method. The officers provided no competent evidence to contradict the School District or show it had improperly used the FWW or otherwise violated the FLSA, either at summary judgment or on appeal. Nor have they adequately explained on appeal how the School District violated the FLSA. We affirm the district court's grant of summary judgment to the School District.

## B. EPA claims—Garza and Reyes

Officers Garza and Reyes, whose EPA claims survived the motion to dismiss but not summary judgment, argue that the district court erred when granting summary judgment in favor of the School District because they submitted evidence that they make less money than Officer Martinez but do more work.

As discussed above, to make out a prima facie case of discrimination under the EPA, a plaintiff must show that he performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as a coworker of the opposite sex who is similarly situated, but received less money. *See Chance*, 984 F.2d at 153.

It is undisputed that Officer Martinez has a Bachelor of Science degree in Criminal Justice and Garza and Reyes do not. Under 29 C.F.R. § 1620.13(c),

level of education can be a sex-neutral basis for difference in pay. It is also undisputed that Officer Martinez performs duties that the two officers do not: she was frequently assigned to a school with a higher incident rate and greater student population than other campuses. So it does not appear that the male officers have equal job qualifications or duties. In other words, "the [officers'] job duties are not 'nearly identical' to those of their comparators; their positions do not 'requir[e] equal skill, effort, and responsibility under similar working conditions.'" *Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 832 (5th Cir. 2015) (second alteration in original) (quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008); *Chance*, 984 F.2d at 153). We affirm the district court's grant of summary judgment to the School District.

## III.   Judgment as a matter of law

Under Rule 50, a district court can grant a motion for judgment as a matter of law when "a party has been fully heard on an issue" but there is no "legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). "We apply the same standard of review as the district court did in reviewing the court's grant of judgment as a matter of law . . . ." *London v. MAC Corp. of Am.*, 44 F.3d 316, 318 (5th Cir. 1995). All reasonable inferences from the evidence presented must be drawn in favor of the non-movant. *Id.* A motion for judgment as a matter of law can be granted only if a rational jury could not find their way to a contrary verdict. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 950–51 (5th Cir. 1994). "If there is substantial evidence—that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion—then the motion should have been denied." *Id.* at 951.

### A. FLSA retaliation claims

To make out an FLSA retaliation claim, "a plaintiff must make a prima facie showing of (1) participation in protected activity under the FLSA; (2) an

adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (emphasis and quotation omitted). The plaintiff must also prove by a preponderance of the evidence that "the adverse employment action would not have occurred 'but for' plaintiff's protected activity." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 580 (5th Cir. 2004).

Determining whether discrimination occurred requires application of the Supreme Court's burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hagan*, 529 F.3d at 624. Under that framework—as applied to FLSA retaliation claims—if a plaintiff makes out a prima facie case, then the defendant must articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to offer evidence that this reason is pretextual. *Id.*

The district court found that the officers articulated a prima facie case when they showed that their yearly work days had been reduced from 226 to 187 after they filed a complaint with the DOL, followed by bonuses and the hiring of security guards. But the district court also found that the School District articulated a legitimate, non-retaliatory reason for the adverse actions—the budget shortfall. The School District cut numerous programs and reduced the number of hours for the whole police department, even for officers who did not file DOL complaints. The bonuses and hired security guards were attributable to the unforeseen windfall. Finally, the district court found no evidence of pretext.

On appeal, the officers urge that it is undisputed that the School District had options when deciding whether to cut their hours and this shows a factual issue about whether the cuts were pretextual. The officers also reject the notion that a budget crisis can count as a legitimate, non-discriminatory reason for taking adverse employment actions. The officers finally contend that, because

No. 17-40839

there were differing accounts as to whether the School District was even suffering a budget crisis, judgment as a matter of law was inappropriate.

Although the School District cut the officers' time when it had other ways of meeting its budgetary constraints, this does not create a fact issue for a jury, negate the legitimacy of the proffered reason for cutting the days, or show pretext. The School District offered legitimate reasons for why it made cuts to the police department in particular. Importantly, it cut the hours of *all* the officers in the entire department, not just the ones who had engaged in FLSA protected activity. Without any other evidence of pretext, there was not enough evidence for a rational jury to rule in the officers' favor.

The district court was also right to conclude that the testimony of Yliana Gonzalez, a school district board member who testified that she did not believe that the School District was facing a budgetary crisis in 2012, was "without a sufficient personal knowledge predicate to be helpful to the jury." It was "undisputed that [Gonzalez] was not involved in the details of the [School District's] budget items." As such, there was no "legally sufficient evidentiary basis" for the jury to decide that the School District experienced only a budgetary surplus and no crisis. FED. R. CIV. P. 50.

We affirm the district court's grant of judgment as a matter of law to the School District on the officers' FLSA retaliation claims.

*B. First Amendment retaliation—Espinoza, Naranjo, and Olivarez*[1]

---

[1] The School District urges that Federal Rule of Appellate Procedure 10(b)(2) bars consideration of this issue because the officers failed to file a trial transcript and so the three officers' testimony is not in the record. An appellant's failure "to provide a transcript is a proper ground for dismissal of the appeal." *Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir. 1990) (citing *Coats v. Pierre*, 890 F.2d 728, 731 (5th Cir.1989)). However, dismissal is not mandatory. *Coats*, 890 F.2d at 731. When this court has declined to exercise its discretion to dismiss arguments on appeal when not all the relevant evidence was submitted, the court "necessarily limit[ed] the scope of [its] review to the available record." *Boze v. Branstetter*, 912 F.2d 801, 803 n.1 (5th Cir. 1990).

No. 17-40839

To establish a First Amendment retaliation claim, the officers must show that (1) they suffered an adverse employment action; (2) they spoke as citizens on a matter of public concern; (3) their interest in speaking outweighed the School District's interest in promoting efficiency; and (4) their speech motivated the School District's adverse action against them. *See Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). Only the second prong is at issue. "[W]hether a statement addresses a matter of public concern is a question of law that must be resolved by the court." *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015).

The district court dismissed Officers Espinoza's, Naranjo's, and Olivarez's claims because their DOL complaint "only raised wage issues" and so was "solely personal, and not a matter of public concern." As to their internal grievances, they primarily concerned "management policies" but also alleged sexual harassment and police misconduct and so presented "at most, a 'mixed speech' situation" that the court held was not protected under *Teague v. City of Flower Mound*, 179 F.3d 377, 380–81, 383 (5th Cir. 1999) (finding the "mixed speech" about police misconduct made in the context of an employer-employee dispute not to be a matter of public concern).

On appeal, the officers contend that the district court erred when it held that they did not speak on a matter of public concern.[2] "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a

---

[2] The district court did not discuss or determine whether the officers spoke *as citizens* on a matter of public concern. The officers were speaking as citizens because they complained to the DOL. *See Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) ("If 'a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.'" (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008))).

subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014)). "[P]ublic concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (alteration in original) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

As to content, the DOL complaint dealt solely with the officers' wage-and-hour dispute. "Speech that 'is related only to [a] superior's employment decisions' and that affects a plaintiff 'in a purely personal manner' is not a matter" of public concern. *Id.* at 484 (quoting *Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir. 1989)). The district court properly held that the officers' speech in the DOL complaint was not on a matter of public concern. Meanwhile, the officers' internal grievances were primarily personal grievances about pay and management in the police department, although there was apparently some hearing testimony about sexual harassment and investigatory decisions that could arguably be considered public matters. The officers were also seeking primarily personal and employment-related relief, which weighs against finding the speech to be on matters of public concern. At most, the speech in the internal grievances was "mixed speech."

The form of the officers' speech also weighs against finding it to be on a matter of public concern. The officers are correct that their grievances are distinguishable from the private lawsuit in *Gibson*. However, they filed only internal grievances and did not choose "to inform someone outside" of the School District of their issues. *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006). Moreover, the primary focus of the grievances related to personal complaints. *Compare id.* (finding "the majority of [the plaintiff's] concerns did not relate to her personal grievances"), *with Teague*, 179 F.3d at 383 (finding

a grievance letter to be "undeniably private in form" because it sought personal redress).

Finally, the context of the officers' speech suggests that it was not about a matter of public concern. In *Gibson*, this court held that speech "is not on a matter of public concern if it is made solely in 'furtherance of a personal employer-employee dispute.'" 838 F.3d at 486 (quoting *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005)). Another contextual consideration is whether the "speech occurred 'against a backdrop of widespread debate in the community.'" *Id.* at 487 (quoting *Markos v. City of Atlanta*, 364 F.3d 567, 572 (5th Cir. 2004)). The officers made their internal grievances primarily in furtherance of a personal employer-employee dispute. And they have presented no evidence of a widespread public debate about the budget crisis or the management of the School District's police force.

The officers have not demonstrated that their speech to the DOL or the School District implicates a public concern or deserves First Amendment protection. We affirm the district court's judgment as a matter of law in favor of the School District on the First Amendment retaliation claims of Officers Espinoza, Naranjo, and Olivarez.

## IV.    Evidentiary Rulings

Finally, the officers contend the district court erred when it excluded some testimony at trial and instructed the jury to disregard "opinion and reputation testimony" showing that the School District allegedly has a history of improper retaliation.

"A district court's evidentiary rulings are reviewed for abuse of discretion." *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998). "However, even if the district court erred in its evidentiary rulings, such error can be excused if it was harmless error." *Id.*

No. 17-40839

We need not reach the question of whether the district court erred in its evidentiary rulings, as any error was harmless. The jury ultimately found that neither Officer Reyes nor Officer Garza—the only officers whose retaliation claims went to the jury—had been subjected to an adverse employment action, a necessary condition to finding liability on a First Amendment retaliation claim. The officers do not challenge the jury's finding on appeal.[3] The excluded testimony goes to elements such as policy and custom, and thus, even if admitted, would not have changed the jury's finding that the School District took no adverse employment action against the officers.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's rulings.

---

[3] In their reply brief, the officers state that "Appellee's belief that Appellant did not appeal the jury's verdict is wholly inaccurate." But merely stating this does not make it so. The officers did not argue that no rational jury could have found that the school district did not take an adverse employment action against them and so failed to challenge on appeal the jury's finding.